# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 2:09CR00002 |
| v. ) | **OPINION** |
| ) | |
| **COURTNEY HARRIS**, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant. ) | |

*Debbie H. Stevens, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Nancy C. Dickenson, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

The defendant, an inmate at a federal prison, pleaded guilty to ten counts of exposing himself to female prison employees. In sentencing him, I imposed a variance above the applicable advisory sentencing guideline range. This opinion sets forth the reasons for my sentence.

I

Courtney Harris, a 31-year-old inmate at U.S. Penitentiary Lee County ("USP Lee"), located in this judicial district, pleaded guilty without a plea agreement to a ten-count indictment charging him on separate occasions in 2008 and 2009 with obscenely displaying his private parts where others were present, in violation of 18

U.S.C.A. § 13 (West 2000) and Va. Code Ann. § 18.2-387 (2009). The uncontested facts showed that Harris, while confined in the prison's special housing unit, repeatedly masturbated in front of six different female prison employees. The offense conduct, as described in the Presentence Investigation Report ("PSR"), was as follows:

> On July 14, 2008, inmate Harris, while on the recreation area of the special housing unit, exposed his penis and moved his hand in an up and down motion over his penis in the presence of [TM], who is a registered nurse at USP Lee.
>
> On August 5, 2008, inmate Harris exposed and stroked his penis in front of [AH], who was a staff member at USP Lee. When he was ordered to stop his actions, he continued to rub his exposed penis until he ejaculated on the hallway floor.
>
> On September 5, 2008, Dr. [TL], a psychologist at USP Lee, was making rounds. Inmate Harris was standing on his toilet, and he was naked. He was looking out the cell door window and he was stroking his erect penis. He moved his hand over his penis in an upward/downward motion while looking directly at Dr. [L].
>
> On September 11, 2008, Dr. [L] was making rounds in the special housing unit. Inmate Harris was housed in cell C 148. Inmate Harris was standing on his toilet, naked. He was facing the cell door, looking directly at Dr. [L]. He was stroking his erect penis in an upward/downward motion.
>
> On September 26, 2008, another psychologist at USP Lee, Dr. [ME], was making rounds in the special housing unit. She was on the recreational yard of the special housing unit. Inmate Harris attempted to get her attention to speak to her. He was standing at the front of the recreation cage. When she approached the cage, slowed down to speak

-2-

Case 2:09-cr-00002-JPJ-RSB   Document 44   Filed 08/27/09   Page 2 of 8   Pageid#: 188

to inmate Harris, she saw him stroking his exposed penis in an upward/downward motion with his right hand while facing her. He was making direct eye contact with her as he continued to stroke his penis.

On this same day, September 26, 2008, but at a different time, [MR] was making rounds. Inmate Harris was still on the outside recreation area. Inmate Harris stopped her and asked her a question, and while she was answering his question, Harris reached into his pants and exposed his penis. He held his penis with his left hand and began moving it in an upward/downward motion and asked Ms.[R] not to say anything about the incident.

On October 17, 2008, Ms. [R] was making rounds in the special housing unit. She walked down range. She looked inside inmate Harris' cell where he was standing naked, hanging from the upper bunk so he could be easily been seen as she walked by. Inmate Harris had his penis in his right hand and was moving it in an upward/downward motion.

On December 15, 2008, Dr. [L] was making rounds in the special housing unit. She approached cell C 116, which housed inmate Harris. Inmate Harris was standing on his toilet facing the range or looking out the window. He was naked. He faced the cell door, looked directly at Dr. [L], and stroked his exposed, erect penis. He moved his hand in an upward/downward motion on his erect penis facing directly at and looking directly at Dr. [L].

On February 12, 2009, Dr. [L] was making her rounds in the special housing unit. When she approached cell 135, which housed inmate Harris, he was standing at the door looking out the window. He was naked. He was looking at Dr. [L] and he stroked his exposed erect penis. His hand was moving in an upward/downward motion on his erect penis while looking at Dr. [L].

On February 19, 2009, Dr. [E] was making her rounds in the special housing unit. She approached cell 138, which housed inmate Harris. The inmate was standing in the center of the cell, about a foot

from the shower, looking out the small window of the cell. As Dr. [E] looked into the window to talk to inmate Harris, he lowered his boxer shorts, made direct eye contact with Dr. [E], and was rubbing his flaccid penis in an up and down motion with his right hand while facing her and making eye contact.

(PSR ¶¶ 4-6.)

Harris has been confined in four different federal prisons since 2003.[1] While in these prisons, he has had a total of 49 institutional violations involving inappropriate sexual behavior, including indecent exposure, making sexual proposals or threats, and engaging in sexual acts. He has also had numerous other institutional violations, including assaulting and interfering with staff members, destroying property, refusing work assignments, and refusing to participate in impulse control classes.

At the request of defense counsel, and pursuant to 18 U.S.C.A. § 3552(c) (West 2000), I directed that an independent psychological evaluation be made of Harris to determine whether he suffered from any mental impairment or condition that may have affected his conduct or which might influence a determination of the proper punishment. The evaluation, by a private licensed clinical psychologist, resulted in a diagnosis of Antisocial Personality Disorder and Exhibitionism. The psychologist

---

[1] The defendant was sentenced to a total term of 111 months on March 10, 2003, by the United States District Court for District of South Carolina following convictions for distribution of crack cocaine and possession of a firearm during a drug trafficking crime.

-4-

concluded that "Mr. Harris's behavior is most influenced by the consequences that he experiences . . . . [t]herefore, a combination of a real consequence in terms of additional time of incarceration, and the possibility of having additional time imposed for failure to maintain control of his behavior in the future, is most likely to motivate him to control his behavior and participate in treatment for his sexual offending behavior." (Psych. Evaluation, July 11, 2009, at 9.)

In the PSR, which I adopted without objection, Harris was determined to have a Total Offense Level of 11, with a Criminal History Category of V, resulting in an advisory guideline range of 24 to 30 months imprisonment. The probation officer suggested that an upward variance might be warranted in the case and prior to the sentencing hearing the government filed a Motion for an Upward Variance. At the conclusion of the hearing, I imposed a sentence of 60 months imprisonment.

II

While I must begin the sentencing process by "correctly calculating the applicable Guidelines range," *Gall v. United States*, 128 S. Ct. 586, 596 (2007), I may reject a sentence within the range "because a sentence within the Guidelines fails to reflect the other [18 U.S.C.] § 3553(a) factors or 'because the case warrants a

different sentence regardless.'" *United States v. Evans*, 526 F.3d 155, 164 (4th Cir. 2008) (quoting *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007)).

In imposing a sentence, I must, under § 3553(a), consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as

> the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2009).

While Harris is capable of controlling his behavior,[2] it is clear that he is difficult to deter. In the past, prison authorities have imposed administrative punishment on him for his sexual misbehavior, including disallowance of good time credit, removal of telephone, commissary and visiting privileges, and disciplinary segregation, all to no avail. Indeed, even the current prosecution did not deter Harris; on July 10, 2009, after he had pleaded guilty and was awaiting sentencing, he

---

[2] The psychological evaluator confirmed that Harris suffers from no psychotic symptoms of any type or any indication of thought disorder; his intellectual functioning is in the low average range.

-6-

engaged in another episode with one of his frequent victims, a female prison psychologist.

Harris shows no remorse or empathy for his victims. He believes that his victims actually enjoy his behavior (Psych. Evaluation, July 11, 2009, at 9) and boasts about these occasions with his fellow inmates (*id*). He is gratified by the humiliation suffered by his victims, as shown by a letter he wrote in 2008 to the female prison psychologist, in which he told her that he was not sorry for his conduct, and then described a sexual fantasy with her. (Mot. for Upward Variance, Ex. 3.) According to the psychological evaluator, Harris' conduct is "sometimes motivated out of a desire to show disrespect for women." (Psych. Evaluation, July 11, 2009, at 9.)

Moreover, Harris' lack of remorse is a long term character trait. He described his past history of aggression to the psychological evaluator as follows:

> Mr. Harris described: "I've been jumping on people all my life." He reported that he could not estimate the number of times he had been in fights or been aggressive to others. He described that he and his friends would run up and take jewelry off of people, beat them up, and stomp them. He described that he had "beat people up just for discipline" when they had stolen from him or "said the wrong thing" to him. He indicated that most of the violence he had been involved in was about money or drugs. Mr. Harris reported he had used weapons in aggressive acts against others but did not want to discuss details of some of his aggressive acts. He did not express remorse about any of his past aggressive behavior.

(Psych. Evaluation, July 11, 2009, at 3.)

Case 2:09-cr-00002-JPJ-RSB   Document 44   Filed 08/27/09   Page 7 of 8   Pageid#: 193

In order to deter Harris, I find that a sentence longer than that of the guideline range is appropriate. The evidence shows that Harris' exhibitionism is a learned behavior that Harris can control, once he understands the serious consequences to him otherwise. Moreover, I find his conduct more serious than the guideline range reflects. Female prison staff should not have to suffer from Harris's sexual aggression as a condition of their employment. This conduct is destructive of discipline and order in prison and a longer prison sentence may deter similar conduct by others.

III

For the reasons stated, I find that a sentence of 60 months is sufficient, but not greater than necessary, to carry out the purposes of § 3553(a).

DATED: August 27, 2009

/s/ JAMES P. JONES
Chief United States District Judge